```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
                          JACKSON DIVISION


MCLANE SERVICES, INC.                                       PLAINTIFF

V.                                    CIVIL ACTION NO. 3:04CV974LS

ALSTOM POWER, INC. ET AL.                                  DEFENDANTS
```

## MEMORANDUM OPINION AND ORDER

This cause is before the court on motion of defendant Alstom Power, Inc. (Alstom) for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff McLane Services, Inc. (MSI) has responded in opposition.[1] The court, having considered the memoranda and submissions of the parties, concludes that defendant's motion should be granted in part and denied in part as set forth herein.

This action arises out of the parties' involvement in the construction of the Red Hills Power Plant in Ackerman, Mississippi. Beginning in 1998, defendant Alstom was awarded a contract to design, manufacture and deliver two CFB boilers to the Red Hills Project, and Alstom, in turn, hired NV Gouda Vuurvast (Gouda) as a subcontractor to design, supply and install the refractory system for the two boilers. In July 2000, Gouda contracted with plaintiff MSI to assist with the refractory

---

[1] In actuality, defendant has filed three motions for summary judgment, and plaintiff has responded in opposition to each motion. Because there is significant overlap between the motions, the court will treat the outstanding motions as one motion for summary judgment for purposes of this opinion.

installation. In August 2000, after having become dissatisfied with Gouda's work, Alstom terminated its contract with Gouda and approached MSI about completing the refractory project.

MSI was reluctant to take on the project, because Gouda owed it approximately $800,000 for materials and services and this unpaid debt was making it difficult for MSI to cover its payroll. Alstom, however, was anxious for MSI to stay on the project and complete the work in order to avoid significant financial penalties which would be incurred if the project was not completed on schedule. MSI ultimately agreed to remain on the project and complete the refractory installation, and the parties agreed to three conditions designed to alleviate MSI's financial concerns. First, Alstom agreed to a "time and materials" contract, rather than its standard lump-sum contract. Second, Alstom allowed MSI to submit invoices on a bi-weekly basis and agreed to pay all invoices within fifteen days of submission. Third, Alstom submitted a payment of $700,000 to MSI. The issue presented by this litigation is the effect, or purpose, of this $700,000 payment.

According to MSI, Alstom represented that it would pay MSI the debt of over $800,000 which Gouda owed MSI in exchange for MSI's agreement to continue working on the refractory installation. MSI submits that it understood the $700,000 paid by Alstom to MSI up front represented partial payment of Gouda's debt. Alstom, on the other hand, asserts that the $700,000 was an

2

advance against future work by MSI, and was paid only to alleviate MSI's immediate cash flow problems while MSI sought collection of the unpaid debt from Gouda.  As such, when MSI completed its work in November 2000 and submitted its final invoice to Alstom for payment, Alstom applied the $700,000 advance to the final invoice.[2]

On August 12, 2004, MSI filed this action against Alstom seeking damages in the amount of $889,000 for breach of contract, or alternatively, under theories of quantum meruit and negligent and/or intentional misrepresentation.[3]  Alstom has moved for summary judgment as to each of these claims.

Breach of Contract

MSI alleges that Alstom orally agreed to pay MSI more than $800,000 for the work MSI had performed under its contract with

---

[2] Alstom claims that it determined that several questionable or incorrect billings were present on MSI's final invoice, and that after applying the $700,000 advance, it found that MSI owed Alstom approximately $35,000.  Alstom has filed a counterclaim in this action for recovery of that amount.  Alstom is not seeking summary judgment on its counterclaim.

[3] The court notes that following Gouda's termination, it filed suit against Alstom and MSI, alleging claims of breach of contract and fraud.  In accordance with the contract provisions, Gouda's claims against Alstom were submitted for arbitration, conducted by the International Court of Arbitration in Geneva, Switzerland.  Because MSI's contract with Gouda did not contain an arbitration provision, MSI did not participate in arbitration, but instead, assigned its claims against Gouda for unpaid goods and services to Alstom.  The arbitrators declined to accept jurisdiction over the assigned claims.  MSI subsequently filed this action against Alstom.

3

Gouda in order to induce MSI to continue work on the project, and that Alstom then breached this oral contract by thereafter purporting to treat the $700,000 payment as an advance against the balance claimed by MSI for the work it subsequently performed, i.e., the work performed <u>after</u> Gouda's termination and <u>after</u> Alstom induced MSI to remain on the job.

In its motion, Alstom argues that MSI's breach of contract claim is barred by the parol evidence rule and the statute of frauds. Alstom specifically and repeatedly denies that it orally agreed to pay MSI for prior work, but it argues that even assuming for summary judgment purposes that an alleged oral agreement was made, MSI's claim still must fail for two reasons. First, according to Alstom, the purchase order for MSI's work clearly states that the $700,000 payment was an "advance payment," so that the parol evidence rule bars admission of the alleged oral agreement to contradict the purchase order. Secondly, Alstom submits that an oral agreement to pay the debt of another, as is alleged by MSI, is unenforceable under the statute of frauds.

The written evidence of the subject transaction consists of the following. An August 21, 2000 purchase order prepared by Alstom, and signed by MSI on August 23, 2000, states, in part,

> Terms of Payment:
> Advance Payment of $700,000.00 Net Cash
> Seller's is [sic] to invoice weekly. Wire transfer
> to Seller's bank shall be made net 15 days.

On August 24, 2000, Alstom generated a "Purchase Change Order," which MSI did not sign, that states,

4

> This change order records the advance payment of
> $700,000.00 wire transferred on August 23, 2000 to the
> Seller's account.
> This payment is applicable to future work executed on
> behalf of the Purchaser by the Seller under this
> purchase order.

Alstom contends that the purchase order unambiguously recites that the $700,000 payment was an "advance" and the purchase order constitutes the full and complete agreement of the parties, which under the parol evidence rule cannot be altered by extraneous proof of an alleged oral agreement. See Turner v. Terry, 799 So. 2d 25, 32 (Miss. 2001)(stating that "[p]arol evidence will not be received to vary or alter the terms of a written agreement that is intended to express the entire agreement of the parties on the subject matter at hand").  MSI argues that the parol evidence rule is inapplicable for one or more of a number of reasons, including that the purchase order was not intended to and does not represent the complete agreement of the parties;[4] the evidence of Alstom's oral promise is intended to explain, not contradict, the ambiguous purchase order;[5] Alstom's misrepresentation falls within the fraud

---

[4] See Broome Const. Co. v. Beaver Lake Recreational Center, Inc., 229 So. 2d 545, 547 (Miss. 1969)(stating that "the parol evidence rule does not become applicable unless there is an integration of the agreement, that is, unless the parties have assented to a certain writing as a statement of the agreement between them").

[5] See Smith v. Smith, 872 So. 2d 74, 78 (Miss. Ct. App. 2004)("'Parol evidence of the intention of the parties may be received to clear up an ambiguity by reason of which, such intention is not definitely expressed.'")(quoting Byrd v. Rees, 171 So. 2d 864, 867 (Miss. 1965))

5

exception to the parol evidence rule;[6] and finally, additional proof that Alstom's employees continued to represent to MSI that Alstom would pay Gouda's debt was a subsequent modification of the agreement that is not covered by the parol evidence rule.[7]

In the court's opinion, however, it is ultimately unnecessary to resolve the issue of applicability of the parol evidence rule because even were the court to look outside the written agreement and consider the alleged oral promise to pay Gouda's debt to MSI, the court is persuaded that this promise is nonetheless unenforceable pursuant to the statute of frauds.

Alstom argues that under Mississippi law, MSI cannot recover on a claim that Alstom breached an oral contract because under Mississippi's statute of frauds, Miss. Code Ann. § 15-3-1, a promise to pay the debt of another must be in writing to be enforceable.  Section 15-3-1 states:

> An action shall not be brought whereby to charge a defendant or other party: (a) upon any special promise to answer for the debt or default or miscarriage of another person . . . unless . . . the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by

---

[6] See Brown v. Ohman, 42 So. 2d 209, 213 (Miss. 1949)(noting that parol evidence is admissible to prove that a contract was procured by fraud).

[7] See Williamson v. Metzger, 379 So. 2d 1227, 1229 (Miss. 1980)("The rule that a written contract cannot be changed or modified by parol evidence of what was agreed by the parties at the time of making the contract does not preclude a subsequent parol modification of the written contract, provided it is not one which must be in writing under the statute of frauds.").

>    some person by him or her thereunto lawfully authorized
>    in writing.

In considering a party's promise to pay the debt of another, "[t]he question to be kept in mind always is whether or not the person making the promise is entering into an original or a collateral obligation." Allen v. Smith & Brand, 133 So. 599, 601 (Miss. 1931). If the promise is an original obligation, the statute of frauds does not apply, but if the promise is a collateral obligation, the statute of frauds does apply and the promise must be in writing. Id. It is said that,

>    Generally speaking, an oral undertaking by a person not
>    previously liable, for the purpose of securing the debt
>    or performing the same duty for which the person for
>    whom the undertaking is made remains liable, is within
>    the statute of frauds and must be in writing, and if the
>    liability of the debtor is extinguished the promise is
>    original. The continuance of liability of the original
>    debtor has been used as a test in determining whether
>    the contract is collateral or original.

37 C.J.S. Statute of Fraud § 20 (Supp. 2005). The Mississippi Supreme Court recognized this principle in Sweatman v. Parker, 49 Miss. 19 (Miss. 1873), where it set forth guidelines for determining whether a promise is an original or a collateral obligation. For example, "[w]here the promise to pay the debt of another arises out of some new and original consideration of benefit or harm, moving between the newly contracting parties," or "if the consideration springs out of any new transaction, or move to the party promising upon some fresh and substantive ground of personal concern to himself," "it is an original undertaking." Id. On the other hand, "[i]f the party to whom a consideration

7

moves becomes personally liable for the payment of the debt of another person, though made at the same time, and upon the same consideration, it is a collateral undertaking to pay the debt of another." Id. "The sort of promise which the statute means, and which must be reduced to writing, is a promise to answer for the debt, default or miscarriage of another person, <u>for which that other person himself continues liable</u>, and this is the test by which we are to determine whether it should be in writing." Id. (emphasis added). See also Allen, 133 So. at 601-02 (quoting Sweatman).

MSI argues that Alstom's alleged promise to pay Gouda's debt was an original obligation and therefore, not subject to the statute of frauds. It contends that the parties agreed that in exchange for payment of Gouda's outstanding debt, MSI would continue work on the refractory installation and that this agreement constituted a "fresh transaction." Alston, though, asserts that MSI's conduct, particularly after the alleged oral promise was made, demonstrates that MSI continued to consider Gouda primarily liable for the debt, and therefore, the oral agreement was a collateral obligation, subject to the statute of frauds.

In support of its position, Alstom has submitted a copy of a letter dated August 31, 2000 from attorney Alan J. Robert to Gouda, reciting that he had been retained to represent MSI in the collection of the account and demanding payment of the outstanding

8

balance of $749,525.99 within fifteen days.  This letter reflects that even after MSI received the $700,000 payment from Alstom, it continued to attempt to collect from Gouda and thus did not consider that Gouda had been relieved of its obligation to pay MSI.  MSI has offered no proof to suggest otherwise.  Accordingly, any promise by Alstom to pay Gouda's debt was a collateral obligation subject to the statute of frauds.[8]

MSI argues that even if that is the case, equitable estoppel should preclude the application of the statute of frauds.  "[T]he doctrine of equitable estoppel may be invoked to preclude a party to a contract from asserting the unenforceability of a contract by reason of the fact that it is not in writing as required by the statute of frauds."  Sanders v. Dantzler, 375 So. 2d 774, 776 (Miss. 1979).  "Where one has acted to his detriment solely in reliance on an oral agreement, an estoppel may be raised to defeat the defense of the statute of frauds."  Id.; see also In re Estate of Fitzner, 881 So. 2d 164, 173 (Miss. 2003).  MSI contends that it agreed to undertake the completion of the refractory installation based solely upon Alstom's oral agreement to pay Gouda's outstanding balance.  However, the evidence does not support a finding that MSI relied to its detriment on a representation by Alstom that it would pay Gouda's debt.  While it

---

[8] MSI states in its brief that this letter was sent at Alstom's insistence, but not only has failed to suggest how that might be relevant but has also failed to support this assertion with evidence.

9

is true that MSI is still owed Gouda's account balance of over $700,000, its position is essentially the same as when it agreed to continuing working on the refractory installation following Gouda's termination. In other words, its financial situation was not worsened by its decision to complete the Red Hills Project. It is undisputed that Alstom paid MSI according to the terms of the purchase order for work it performed from August 17, 2000 forward; MSI submitted invoices for the work performed and Alstom paid those invoices, subject only to the deduction for the $700,000 "advance payment." Because MSI was not harmed by relying on Alstom's alleged promise to satisfy Gouda's debt, equitable estoppel is not applicable.

Quantum Meruit

Alternatively, MSI seeks to recover against Alstom for goods and services it provided under a theory of quantum meruit, or unjust enrichment. "The doctrine of quantum meruit 'applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.'" In re Estate of Fitzner, 881 So. 2d 164, 174 (Miss. 2003) (quoting Hans v. Hans, 482 So. 2d 1117, 1122 (Miss. 1986)). MSI contends that Alstom never paid anyone, meaning MSI or Gouda, for the work MSI performed while it was

10

working under its contract with Gouda from July 28, 2000 to August 15, 2000.

Alstom asserts that because the work for which MSI seeks recovery was performed pursuant to plaintiff's express contract with Gouda, under Mississippi law, MSI cannot recover against Alstom under a theory of quantum meruit. R.P. Redd v. L & A Contracting Co., 151 So. 2d 205 (Miss. 1963)(holding that a sub-subcontractor could not recover under a theory of quantum meruit from the primary contractor, where the sub-subcontractor had entered into an express contract with the subcontractor to perform the work); see also Sentinel Industrial Contracting Corp. v. Kimmins Industrial Serv. Corp., 743 So. 2d 954 (Miss. 1999)(same); Herber E. Costello, Inc. V. Edwards and Son, Inc., 1998 WL 94925 (N.D. Miss. 1998)(same).  As explained by the court in Redd,

> As a general rule, in order to recover for work and labor on the theory of an implied contract, it is ordinarily deemed essential to show that the services were rendered under the reasonable expectation that they would be paid for by the person sought to be charged, and the person sought to be charged knew that the services were being performed with the expectation that he would pay for such work.

151 So. 2d at 209.  Here, it is undisputed that at the time MSI performed the subject work, that is, provided services and materials between July 28, 2000 and August 15, 2000, it was performing in accordance with its contract with Gouda and hence with an expectation that payment for that work would come from Gouda, not Alston.

11

In response, plaintiff concedes that a party generally cannot recover in quantum meruit where an express contract exists but urges that circumstances here warrant an exception to the rule, and specifically, the facts that Alstom has never paid anyone for the work MSI performed under its Gouda contract; that Gouda only hired MSI at the insistence of Alstom; and that Alstom was the party that initially contacted MSI about working on the Red Hills Project.  MSI's position is without merit.

MSI's argument that Alstom has not paid anyone for the work performed is not supported by the record evidence, which instead reflects that Alstom terminated its contract with Gouda out of dissatisfaction with Gouda's performance, and that the dispute between Gouda and Alstom was resolved through arbitration in which Alstom was awarded over $2.2 million in damages for Gouda's defective work.

Relying on Costello, MSI argues that the Redd decision is not applicable to this case, because Alstom is guilty of misleading or wrongful acts.  1998 WL 94925 at *3.  In Costello, the plaintiff, a sub-subcontractor, argued unsuccessfully that it should be permitted to recover from the defendant, the primary contractor, on a theory of unjust enrichment because the defendant was "guilty of misleading or wrongful acts."  Id.; see Omnibank of Mantee v. United S. Bank, 607 So. 2d 76, 93 (Miss. 1992) (noting that "where a third person benefits from an agreement . . . entered into between two other persons, in the absence of some misleading or

12

wrongful act by the third person, the mere failure of performance by one of the contracting parties . . . does not give rise to a right of restitution against the third person"). Costello alleged that prior to beginning work, it asked the defendant's project supervisor whether the subcontractor had provided a payment bond and was told it had. Costello, 1998 WL 94925 at *3. Costello contended that the subcontractor had not provided a payment bond and that this misinformation was a misleading act which prevented the primary contractor from asserting a defense to the unjust enrichment claim. Id. The court rejected this argument, finding that while the supervisor's information may have been misleading, Costello had nonetheless failed to show that the supervisor knew the information was incorrect and that it was reasonable to rely upon the information. Id. Nevertheless, MSI takes the position that Costello created an exception to the Redd decision where the defendant has engaged in wrongful or misleading acts.

While the court does not read either Omnibank or Costello as creating such an exception, even if there were one, the evidence would not support application of such exception. MSI alleges that Alstom "forced" Gouda to hire MSI for the refractory work; that when MSI began work, Alstom misrepresented to MSI that Gouda was being paid; and that after Gouda's termination, Alstom misrepresented to MSI that it would be paid for all of its work if it would take over the refractory installation on August 16, 2000. MSI's allegation that Alstom "forced" Gouda to hire MSI does not

13

warrant an exception to the rule stated in Redd.  Simply put, MSI willingly entered into its own contract with Gouda in July 2000 and any encouragement or direction Alstom may have given Gouda to hire MSI is inconsequential.

While MSI further claims that prior to MSI's involvement in the project, Alstom misrepresented to MSI that it was paying Gouda, MSI has offered no evidence of any such representation, or misrepresentation, and certainly has not offered evidence from which one might reasonably find that Alston intentionally misled MSI as to its prospect for receiving payment under its subcontract with Gouda.

Furthermore, plaintiff's allegation that Alstom misrepresented that it would pay MSI for *prior work* after Gouda was terminated does not justify an exception, because the work for which MSI seeks compensation would have preceded any such misrepresentation.  In short, in deciding to work for Gouda from July 28, 2000 to August 15, 2000, MSI could not have relied on Alstom's alleged misrepresentation because the alleged promise did not occur until August 16, 2000.

In sum, for the work for which MSI seeks recovery herein, MSI's contract was with Gouda, the subcontractor, not Alstom, the primary contractor.  Alstom had its own contract with Gouda, pursuant to which it would have expected to pay Gouda, not MSI, for the work MSI performed on Gouda's behalf.  In other words, at the time the work was performed, it does not appear that "the

14

services were rendered under the reasonable expectation that they would be paid for by the person sought to be charged, and the person sought to be charged knew that the services were being performed with the expectation that he would pay for such work." Redd, 151 So. 2d at 209.  Accordingly, the court is of the opinion that plaintiff's quantum meruit claim is barred by the rule set forth in Redd and should be dismissed.

Negligent/Intentional Misrepresentation

MSI's third and final claim is that Alstom either negligently or intentionally misrepresented that it would pay MSI the amounts owed by Gouda if MSI completed the refractory installation.[9]  MSI claims that this misrepresentation was intended to induce it to remain on the Red Hills project, that Alstom continued to misrepresent that it would pay Gouda's debt up to the time of the completion of the refractory installation, and that it incurred damages as a result of this misrepresentation.

---

[9] In order to recover for negligent misrepresentation, MSI must prove the following by a preponderance of the evidence: a misrepresentation of a fact, that the representation is material or significant, the defendant's failure to exercise reasonable care, reasonable reliance on the misrepresentation, and damages as a direct result of such reliance.  See Stonecipher v. Kornhaus, 623 So.2d 955, 964 (Miss. 1993).  In order to establish fraud, MSI must prove (1) a representation, (2) its falsity, (3) its materiality, (4) defendant's knowledge of its falsity or ignorance of its truth, (5) defendant's intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) plaintiff's reliance on its truth, (8) plaintiff's right to rely thereon, and (9) plaintiff's consequent and proximate injury.  See Mabus v. St. James Episcopal Church, 884 So. 2d 747, 762 (Miss. 2004).

15

Alstom first points out that, under Mississippi law, a claim of intentional or negligent misrepresentation may not be predicated on a promise relating to future actions. Therefore, because plaintiff's claim is based on an alleged promise to pay Gouda's debt at some point in the future, Alstom asserts that this claim should be dismissed. Defendant does acknowledge that an exception to the rule exists "when a contractual promise is made with the present undisclosed intention of not performing it," Crystal Springs Ins. Agency, Inc. v. Commericial Union Ins. Co., 554 So. 2d 884 (Miss. 1989), but argues that such an exception is not applicable here because MSI has not pled the "undisclosed intention" element of its claim. In response, plaintiff submits, and the court agrees, that "undisclosed intention" is not an element of misrepresentation and therefore defendant's assertion that it failed to adequately plead its claim is without merit.

Alstom further argues that MSI's reliance on the alleged misrepresentation was not reasonable or justified in light of the purchase order, signed by McLane, which stated that Alstom would make a $700,000 "advance payment" to MSI. According to Alstom, because the purchase order did not reflect that MSI would be paid for prior work, it was unreasonable to rely on an oral representation to that effect. In support of this assertion, defendant has pointed to several cases involving credit life insurance in which the plaintiffs alleged that the lender had orally represented that credit life insurance was required to

16

obtain the loan, but the court found that, in light of the fact that the loan documents clearly disclosed that credit insurance was not required to obtain the loan, any reliance by the plaintiff on the alleged misrepresentation was unreasonable. See, e.g., Carter v. Union Security Life Ins. Co., 148 F. Supp. 2d 734 (S.D. Miss. 2001); Watson v. First Commonwealth Life Ins. Co., 686 F. Supp. 153 (S.D. Miss. 1998).

In response, MSI argues that because the purchase order was presented after the representations had been made and after MSI had already undertaken the project, Alstom's argument should be rejected.  Specifically, MSI argues that as soon as the parties reached their oral agreement on August 16, 2000, which included Alstom's promise to pay for MSI's prior work on the project, MSI, pursuant to that agreement, immediately undertook work to complete the refractory project and expended approximately $600,000 on the project before the written purchase order was received on August 21, 2000.  According to Wesley McLane's affidavit, upon receiving the purchase order, he personally asked Gene Johnson, an Alstom employee, about Alstom's promise to pay for the prior work, in response to which Johnson again represented that it would pay Gouda's debt to MSI.  Based on that and the prior representations, McLane ultimately signed the purchase order on August 23, 2000.

Furthermore, MSI contends that the credit life insurance cases defendant cites are also distinguishable from the instant case because while the subject loan documents stated specifically

17

that credit life insurance was not required, here the purchase order does not address the alleged agreement to pay for prior work.  As such, MSI submits that Alstom's representation that it would pay for the prior work do not conflict with the terms of the purchase order.

Having considered the parties' respective positions on the issue, the court cannot conclude, as a matter of law, that it was unreasonable for MSI to rely on the alleged misrepresentation. Accordingly, defendant's motion for summary judgment as to plaintiff's negligent and/or intentional misrepresentation claim is denied.

Based on the foregoing, defendant's motion for summary judgment as to plaintiff's breach of contract and quantum meruit claims is granted, and its motion with respect to plaintiff's negligent and/or intentional misrepresentation claim is denied.

SO ORDERED this 5th day of June, 2006.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE